NO. 25-60020

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

DEBRA MAYS JACKSON

*Plaintiff – Appellee*

v.

TOM DUFF, INDIVIDUAL AND OFFICIAL CAPACITY; STEVEN
CUNNINGHAM, ONLY IN HIS INDIVIDUAL CAPACITY; BRUCE MARTIN,
ONLY IN HIS INDIVIDUAL CAPACITY; JEANNE CARTER LUCKEY,
ONLY IN HER INDIVIDUAL CAPACITY; CHIP MORGAN, ONLY IN HIS
INDIVIDUAL CAPACITY; GEE OGLETREE, ONLY IN HIS INDIVIDUAL
CAPACITY; HAL PARKER, ONLY IN HIS INDIVIDUAL CAPACITY; J.
WALT STARR, ONLY IN HIS INDIVIDUAL CAPACITY

*Defendants – Appellants*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
CIVIL ACTION NO. 3:23-CV-03095-KHJ-MTP

_____

**BRIEF OF APPELLANTS**

_____

Pope S. Mallette (MB No. 9836)
J. Andrew Mauldin (MB No. 104227)
Mayo Mallette PLLC
2094 Old Taylor Road, Suite 200
Oxford, Mississippi 38655
Telephone:  (662) 236-0055
Facsimile:  (662) 236-0035
pmallette@mayomallette.com

dmauldin@mayomallette.com

NO. 25-60020

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

DEBRA MAYS JACKSON                                    Plaintiff – Appellee

v.

TOM DUFF, ONLY IN HIS INDIVIDUAL
CAPACITY; STEVEN CUNNINGHAM,
ONLY IN HIS INDIVIDUAL CAPACITY;
BRUCE MARTIN, ONLY IN HIS
INDIVIDUAL CAPACITY; JEANNE
CARTER LUCKEY, ONLY IN HER
INDIVIDUAL CAPACITY; CHIP MORGAN,
ONLY IN HIS INDIVIDUAL CAPACITY;
GEE OGLETREE, ONLY IN HIS INDIVIDUAL
CAPACITY; HAL PARKER, ONLY IN HIS
INDIVIDUAL CAPACITY; J. WATT STARR,
ONLY IN HIS INDIVIDUAL CAPACITY          Defendants – Appellants

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons

and entities as described in the fourth sentence of Rule 28.2.1 have an interest in

the outcome of this case. These representations are made in order that the judges of

this court may evaluate possible disqualification or recusal.

Tom Duff                          Defendant – Appellant

Steven Cunningham                 Defendant – Appellant

Bruce Martin                      Defendant – Appellant

Jeanne Carter Luckey              Defendant – Appellant

Chip Morgan   Defendant – Appellant

Gee Ogletree   Defendant – Appellant

Hal Parker   Defendant – Appellant

J. Walt Starr   Defendant – Appellant

Alfred E. McNair, Jr.   Defendant

Shane Hooper   Defendant

Ford Dye   Defendant

Ormella Cummings   Defendant

Teresa Hubbard   Defendant

Gregg Rader   Defendant

Alfred Rankins   Defendant

Mayo Mallette, PLLC   Attorneys for Defendants – Appellants and the IHL Board Members in their Individual Capacities

    Pope S. Mallette
    J. Andrew Mauldin

The Winfield Law Firm, P.A.   Attorneys for Defendant IHL Board and its Members in their Official Capacities

    Charles E. Winfield
    Ashlyn B. Matthews

Debra Mays Jackson   Plaintiff – Appellee

Lisa M. Ross   Attorney for Plaintiff – Appellee

Judge Kristi H. Johnson   U.S. District Judge for the Southern District of Mississippi

SO CERTIFIED, this the 2nd day of April 2025.

/s/ J. Andrew Mauldin
J. Andrew Mauldin
Attorney for Defendants-Appellants

## STATEMENT REGARDING ORAL ARGUMENT

Defendants-Appellants request oral argument. Defendants-Appellants were denied qualified immunity despite Plaintiff-Appellee's failure to identify any authority clearly establishing the alleged violation of her equal protection rights.

# **TABLE OF CONTENTS**

Certificate of Interested Persons ................................................................. i

Statement Regarding Oral Argument ...................................................... iv

Table of Contents ................................................................................... v

Table of Authorities .............................................................................. vi

Statement of Jurisdiction ....................................................................... 1

Statement of the Issues .......................................................................... 2

Statement of the Case ............................................................................. 3

    A.  Statement of Relevant Facts ...................................................... 3

    B.  Procedural History .................................................................. 7

Summary of the Argument ................................................................... 10

Argument ............................................................................................. 11

    1. Standard of Review .................................................................. 11

    2.  Defendants-Appellants are entitled to qualified immunity ....... 12

        a. Mays Jackson failed to plead a plausible equal protection claim ......... 14

        b. Mays Jackson failed to identify authority clearly establishing her equal protection claim ......................................................... 21

Conclusion ........................................................................................... 29

Certificate of Compliance ................................................................... 32

# <u>TABLE OF AUTHORITIES</u>

## CASES:

*Arnold v. Williams*, 979 F.3d 262 (5th Cir. 2020) ....................................................11

*Ashcroft v. Iqbal*, 556 U.S. 676, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)..............
.....................................................................................................15, 17, 18, 20

*Backe v. LeBlanc*, 691 F.3d 645 (5th Cir. 2012) ......................................................12

*Benefield v. Magee*, 945 F.3d 333 (5th Cir. 2019)....................................................11

*Bevill v. Fletcher*, 26 F.4th 270 (5th Cir. 2022) .......................................................11

*Bowlby v. City of Aberdeen*, 681 F.3d 215 (5th Cir. 2012) ...............................14, 15

*Brown v. N. Panola Sch. Dist.*, 420 F. App'x 399 (5th Cir. 2011).........................18

*Clanton v. Orleans Parish School District,* 649 F.2d 1084 (5th Cir. 1981)............18

*Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528 (5th Cir. 1997)....................25

*DePree v. Saunders*, 588 F.3d 282 (5th Cir. 2009) ..................................................12

*Edelstein v. City of Brownsville*, 2021 U.S. App. LEXIS 27010, *4 (5th Cir. Sept. 8, 2021) ......................................................................................................................18

*Harlow v. Fitzgerald*, 457 U.S. 819 (1982) ..............................................................13

*Hicks v. LeBlanc*, 81 F.4th 497 (5th Cir. 2023) ......................................................21

*Jones v. Hosemann*, 812 F. App'x 235 (5th Cir. 2020).........................16, 17, 24, 25

*Joseph v. Bartlett*, 981 F.3d 319 (5th Cir. 2020) .....................................................22

*Kovacic v. Villarreal*, 628 F.3d 209 (5th Cir. 2010)................................................12

*Larry v. White*, 929 F.2d 206 (5th Cir. 1991) ..........................................................16

*Lauderdale v. Tex. Dep't of Criminal Justice*, 512 F.3d 157 (5th Cir. 2007) .........16

*Laviage v. Fite*, 47 F.4th 402 (5th Cir. 2022) ...........................................................21

*Linbrugger v. Abercia*, 363 F.3d 537 (5th Cir. 2004)...............................................12

*Lindsley v. TRT Holdings, Inc.*, 984 F.3d 460 (5th Cir. 2023) ................................24

*Mackey v. Pigott*, No. 3:23-CV-233, 2023 WL 7663300, at *6 (S.D. Miss. Nov. 14, 2023) ......................................................................................................26, 27, 28

*Malley v. Briggs*, 475 U.S. 335 (1986) ....................................................................12

*Martin v. Shelby Cnty. Bd. of Educ.*, 756 F. App'x 920 (11th Cir. 2018) .........18, 19

*Muslow v. Bd. of Supervisors*, 2020 U.S. Dist. LEXIS 138349, *39-40, 2020 WL 4471647 (E.D. La. Aug. 4, 2020) .............................................................................25

*Priester v. Lowndes Cty.*, 354 F.3d 414 (5th Cir. 2004)....................................14, 16

*Rice v. ReliaStar Life Ins. Co.*, 770 F.3d 1122 (5th Cir. 2014) ...............................13

*Salzar v. Molina*, 37 F. 4th 278 (5th Cir. 2022)........................................................26

*Sims v. City of Madisonville*, 894 F.3d 639 (5th Cir. 2018) ....................................17

*Tex. Faculty Ass'n v. Univ. of Tex.*, 946 F.2d 379 (5th Cir. 1991)..........................13

*Thompson v. Upshur Cty.*, 245 F.3d 447 (5th Cir. 2001) .........................................13

*Village of Arlington Hts. v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 265, 97 S. Ct. 555, 50 L. Ed. 2d 450 (1977)).............................................................................14

*Vincent v. City of Sulphur*, 805 F.3d 543 (5th Cir. 2015)........................................22

**RULES:**

Fed. R. Civ. P. 12(b)(6)................................................................................................8

Fed. R. Civ. P. 8 ...........................................................................................................8

# STATEMENT OF JURISDICTION

Individual Defendants-Appellants Tom Duff, Steven Cunningham, Jeanne Carter Luckey, Bruce Martin, Chip Morgan, Gee Ogletree, J. Walt Starr, and Hal Parker appeal from the order entered in the United States District Court for the Southern District of Mississippi on January 6, 2025, which denied Defendants-Appellants' assertion of qualified immunity as to Plaintiff-Appellee's equal protection sex discrimination claim based on their failure to hire Plaintiff as the President of Jackson State University in 2023. The District Court had jurisdiction over this matter under 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

Defendants-Appellants timely filed a Notice of Appeal on January 15, 2025. This Court has jurisdiction over the appeal under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1.　　Whether Defendants-Appellants were entitled to qualified immunity as to Plaintiff's equal protection claim which was based on the IHL Board's failure to hire Plaintiff as the President of Jackson State University in 2023.

2.　　Whether Plaintiff pled a plausible equal protection claim against the individual Defendants-Appellants despite Plaintiff not alleging intentional discrimination on the part of any of individual Defendant-Appellant.

3.　　Whether Plaintiff pled a plausible equal protection claim involving the violation of clearly established law despite Plaintiff's failure to identify any such authority in response to Defendants-Appellants' assertion of qualified immunity.

# STATEMENT OF THE CASE

## A.    <u>Statement of Relevant Facts</u>[1]

Under Mississippi law, the Mississippi Board of Trustees of State Institutions of Higher Learning (the "IHL Board") is granted authority over the management and control of Mississippi's eight public universities, including Jackson State University ("JSU"), and has the power and authority to elect the heads of those universities. Miss. Const. Section 213A; Miss. Code Ann. Section 37-101-1; 37-101-15(f).  The individual members of the IHL Board are appointed to serve by the Mississippi Governor, with the advice and consent of the Mississippi senate. Miss. Code Ann. Section 37-101-3(1).

This lawsuit arises from two separate decisions made by the IHL Board as to the hiring of JSU's twelfth institutional President in 2020 and its thirteenth President in 2023. ROA.720-24. The District Court dismissed the Plaintiff's claims as to the 2020 hiring decision, and the current appeal challenges only the District Court's failure to grant qualified immunity at the motion to dismiss stage to certain of the individual IHL Board members who Plaintiff alleged voted to appoint former IHL deputy commissioner Marcus Thompson as JSU's thirteenth President in 2023. ROA.746-49.

---

[1] Because this appeal involves the assertion of qualified immunity at the Rule 12 stage, the statement of relevant facts is based on Plaintiff's allegations.

Based on the Plaintiff's allegations, the IHL Board initially retained a search firm to identify candidates as part of that hiring process, and Plaintiff Debra Mays Jackson, who had served as a senior administrator at JSU, was one of seventy-nine applicants to submit an application for the position. ROA.452-53. Neither the search committee nor the IHL Board ever interviewed Mays Jackson for the position of president, and the IHL Board ultimately voted to hire Marcus Thompson, who was then serving as Deputy Commissioner of the IHL, as President of JSU. ROA.453.

While Mays Jackson claims that she should have been hired as president, her allegations regarding the individual IHL Board members' involvement in the search and hiring process were paltry. ROA.453, 739-41. Her sex discrimination claim was premised almost entirely on her allegation that "JSU Search Committee members Steven Cunningham, Ormella Cummings, Bruce Martin, Gee Ogletree and Hal Parker knew about Mays Jackson's 2021 EEOC Complaint of sex discrimination as they were IHL board members when Mays Jackson filed the Complaint and IHL Hired counsel to respond to her discrimination allegations," and that "[a]lthough Marcus Thompson did not apply for the job through [the search firm], on November 16, 2023, Steven Cunningham, Ormella Cummings, Tom Duff, Teresa Hubbard, Jeanne Carter Luckey, Bruce Martin, Chip Morgan, Gee Ogletree, Gregg Rader, J. Walt Starr and Hal Parker named Marcus Thompson

as JSU's 13th President." (Duff, Cunningham, Martin, Luckey, Morgan, Ogletree, Parker, and Starr, hereinafter referred to as the "Defendants-Appellants").[2] ROA.453.

Mays Jackson pled no facts as to the alleged conduct of the individual IHL Board members and failed to articulate how any of them purportedly violated her right to equal protection under the Fourteenth Amendment, aside from voting to hire Thompson. While she alleged that a subset of the IHL Board members who had served on the search committee denied her an opportunity to interview for the position and then voted with the remaining board members to hire Thompson, her claims appeared premised entirely on the IHL Board's collective action and not any individual actions undertaken by any of the Individual Defendants, aside from the mere fact of voting on the presidential appointment. ROA.451-53.

Defendants-Appellants made those arguments before the District Court in support of their motion to dismiss and for qualified immunity, and Mays-Jackson did little to rehabilitate her claim based on the 2023 presidential appointment, choosing instead to focus almost exclusively on the earlier 2020 hiring process. ROA.577-80, 583-89; ROA.671. That claim failed because she had not applied for

---

[2] While Plaintiff asserted her claim against Cummings, Hubbard, and Rader, she failed to properly add those individuals as defendants, and the District Court dismissed her claims against those defendants pursuant to Federal Rule of Civil Procedure 4. ROA.728.

the job in 2020, not stated a prima facie case of discrimination, and her claim was time-barred in any event. ROA.736-38.

As to the 2023 decision, Mays-Jackson failed to identify a case clearly establishing that the individual IHL Board members had violated her equal protection rights by not hiring her as JSU's President, and she failed to offer any substantive argument as to that separate hiring process. ROA.671. In analyzing the sufficiency of her claims, the District Court noted that Mays-Jackson's argument about the 2023 hiring process was limited to a "singular sentence echoing her argument about the 2020 hiring of Hudson," but the court nonetheless considered the merits of the claim despite the inadequacy of her briefing. ROA.739.

The District Court ultimately found Mays Jackson had plausibly alleged that "she was a qualified female who applied for the position of JSU President, and she was rejected when Thompson—a similarly situated male—was promoted to the position." ROA.740. According to the District Court, those facts alleged a prima facie case of sex discrimination for failure to hire, and that alone was sufficient to defeat the individual Defendants-Appellants' assertion of qualified immunity as to her equal protection claim. ROA.740. Because Mays-Jackson alleged that each of the individual Defendants-Appellants voted to hire Thompson, the District Court did not analyze whether she had also pled any discriminatory intent or individual action by the Defendants-Appellants. ROA.741.

**B.    Procedural History**

Plaintiff-Appellee Debra Mays Jackson filed her original Complaint in this matter on November 16, 2023. ROA.15. The next day, she filed her First Amended Complaint, and then several months later amended again with leave of Court and filed her Second Amended Complaint on February 15, 2024. ROA.6-7. Mays Jackson's Second Amended Complaint asserted claims against both the IHL Board as an entity and against various trustees of the IHL Board, but she included both then-serving trustees and former trustees and failed to differentiate which claims were asserted against which trustees. ROA.66-68; ROA.176-179. The individually named trustees all moved to dismiss Mays Jackson's allegations against them, and Mays Jackson responded in opposition. ROA.176-189; ROA.314-326.

Following the briefing on the individual defendants' motion to dismiss, Mays Jackson again moved to amend. The District Court granted Mays Jackson's request, and on June 14, 2024 Mays Jackson filed her Third Amended Complaint, which is the operative pleading of record (hereafter, the "Complaint").[3] ROA.441. The operative Complaint asserted claims against the IHL Board, IHL Commissioner Alfred Rankins, and IHL Board members Tom Duff, Steven Cunningham, Bruce Martin, Jeanne Carter Luckey, Chip Morgan, Gee Ogletree,

---

[3] Though it was her fourth pleading of record, the operative complaint was labeled "Second Amended Complaint". ROA.6-7; ROA.441.

Hal Parker, J. Walt Starr, Alfred E. McNair Jr., Shane Hooper, Ford Dye, Ormella Cummings, Teresa Hubbard, and Gregg Rader, in their individual and official capacities. ROA.442-44. The individual Board Members again filed a Motion to Dismiss and for Qualified Immunity pursuant to Federal Rules of Civil Procedure 12(b)(6) and 8(a)(2). ROA.484-486; ROA.576-592.

Mays Jackson challenged the IHL Board's hiring of JSU's president in both 2020 and 2023 in the same Complaint, but the District Court dismissed her claims against the Defendants-Appellants as to the 2020 hiring decision. ROA.746. For pertinent purposes, Mays Jackson asserted her 2023 sex discrimination claim against all the named individual defendants except McNair, Hooper, and Dye. ROA.455-57. She claimed that individual IHL Board members Cunningham, Cummings, Duff, Hubbard, Luckey, Martin, Morgan, Ogletree, Rader, and Parker voted to name Thompson president "when Mays Jackson was clearly more qualified for the President's position than Marcus Thompson." ROA.456.[4]

Mays Jackson also filed a separate action against the IHL Board only, asserting a Title VII sex discrimination claim and Title VII retaliation claim. ROA.720. The District Court subsequently consolidated that case with the instant case, and then dismissed the Title VII discrimination claim as duplicative with the

---

[4] Plaintiff failed to properly add Cummings, Hubbard, and Rader as defendants and the District Court dismissed her claims against those defendants pursuant to Federal Rule of Civil Procedure 4. ROA.728.

operative Complaint and the retaliation claim based on Mays Jackson's abandonment. ROA.718-19; ROA.745.

The District Court dismissed her 2023 sex discrimination claim asserted in the instant Complaint against individual defendants McNair, Hooper, Dye, and Rankins, but denied qualified immunity and allowed her claim to proceed against individual Defendants-Appellants Cunningham, Duff, Luckey, Martin, Morgan, Ogletree, Starr, and Parker based on Plaintiff's allegation that they voted to hire Thompson. ROA.739-41; ROA.746-47. Defendants-Appellants timely appealed the denial of their qualified immunity. ROA.748-49.

## SUMMARY OF THE ARGUMENT

The District Court erred when it denied the Defendants-Appellants' entitlement to qualified immunity as to Mays Jackson's equal protection claim, based solely on the court's determination that the plaintiff had plausibly pled that she was qualified for the position of university president, yet the IHL Board voted to hire another candidate. The District Court incorrectly overlooked the plaintiff's failure to offer any specific argument in response to the Defendants-Appellants' assertion of qualified immunity, and then failed to adequately consider whether Mays Jackson plausibly pled unlawful intent and causation on the part of each Defendant-Appellant.  Mays Jackson failed to plausibly plead that the individual Defendants-Appellants violated her clearly established equal protection rights, and the Defendants-Appellants were entitled to qualified immunity.

# ARGUMENT

## 1.  <u>Standard of Review</u>

This Court has appellate jurisdiction to review a district court's order denying a motion to dismiss on the basis of qualified immunity to the extent that the appeal concerns the purely legal question of whether the defendants are entitled to qualified immunity on the facts alleged. *Bevill v. Fletcher*, 26 F.4th 270, 274 (5th Cir. 2022) (internal quotation omitted). The court also has jurisdiction to review the sufficiency of a complaint on interlocutory appeal when that issue is "inextricably intertwined" with the denial of qualified immunity. *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 673-74, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)).

"When the court has jurisdiction, it reviews de novo the district court's denial of a motion to dismiss on qualified immunity grounds or for failing to state a claim, accepting all well-pleaded facts as true and viewing them in the light most favorable to the plaintiff." *Id.* (internal citations omitted). A plaintiff seeking to overcome a motion to dismiss because of qualified immunity or for failing to state a claim must plead facts that allow the court to draw the reasonable inference that the defendant is liable for the harm alleged. *Arnold v. Williams*, 979 F.3d 262, 266-67 (5th Cir. 2020). The well-pleaded allegations "must make relief plausible, not merely possible." *Benefield v. Magee*, 945 F.3d 333, 337 (5th Cir. 2019) (citation

omitted). The alleged facts must also "defeat a qualified immunity defense with equal specificity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).

## 2.    <u>Appellants are entitled to qualified immunity</u>

The District Court erred when it deprived Defendants-Appellants of qualified immunity.  Designed to protect "all but the plainly incompetent or those who knowingly violate the law," *Malley v. Briggs*, 475 U.S. 335, 341 (1986), the qualified immunity defense "protects public officials from suit unless their conduct violates a clearly established constitutional right." *DePree v. Saunders*, 588 F.3d 282, 287 (5th Cir. 2009) (*citing Mace v. City of Palestine*, 333 F.3d 621, 623 (5th Cir. 2003)). The qualified immunity standard "gives ample room for mistaken judgments." *DePree*, 588 F.3d 282 at 287 (*citing Malley*, 475 U.S. at 343). Where a defendant pleads qualified immunity and shows he or she is an official whose position involves the exercise of discretion, the plaintiff has the burden to establish that the alleged conduct violates clearly established law. *Kovacic v. Villarreal*, 628 F.3d 209, 211 (5th Cir. 2010) (*citing Thompson v. Upshur County, TX*, 245 F.3d 447, 456 (5th Cir. 2001).

To defeat a qualified immunity defense, the plaintiff must show the public official violated a clearly established constitutional right and that the official's conduct was objectively unreasonable under established law. *Linbrugger v. Abercia*, 363 F.3d 537, 540 (5th Cir. 2004). The court frequently analyzes the

application of qualified immunity by determining: 1) whether the plaintiff has alleged a violation of a federal or constitutional right, and 2) whether the right at issue was "clearly established" at the time of the alleged misconduct. *Rice v. ReliaStar Life Ins. Co.*, 770 F.3d 1122, 1130 (5th Cir. 2014) (citing *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009)). This Court determines which prong it will address first. *Id*.

"The law is 'clearly established' if 'the contours of the right [asserted are] sufficiently clear that a reasonable official would understand that what he is doing violates that right,' that is, if 'in the light of pre-existing law[,] the unlawfulness [of the act is] apparent.'" *Tex. Faculty Ass'n v. Univ. of Tex.*, 946 F.2d 379, 389-90 (5th Cir. 1991) (*citing Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). A defendant's actions are not objectively unreasonable "unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution or the federal statute as alleged by the plaintiff." *Thompson v. Upshur Cty.*, 245 F.3d 447, 457 (5th Cir. 2001). In analyzing a qualified immunity defense, courts consider whether "an official could be expected to know that certain conduct would violate statutory or constitutional rights…." *Harlow v. Fitzgerald*, 457 U.S. 819 (1982).

Here, Defendants-Appellants are entitled to qualified immunity regardless of which prong of the qualified immunity analysis the Court considers first. Mays-

Jackson failed to plausibly plead that each of the individual Defendants-Appellants

violated her right to equal protection under the Fourteenth Amendment, and neither

she nor the District Court identified any case clearly establishing that an individual

defendant may be held liable for a claimed equal protection violation absent a

plausible allegation of discriminatory intent and causation. The Court should grant

Defendants-Appellants qualified immunity.

### A. **Mays Jackson failed to plead a plausible equal protection claim**

As noted by this Court, "[t]o state a claim of [] discrimination under the

Equal Protection Clause and section 1983, the plaintiff 'must allege and prove that

she received treatment different from that received by similarly situated individuals

**and that the unequal treatment stemmed from a discriminatory intent**."

*Bowlby v. City of Aberdeen*, 681 F.3d 215, 227 (5th Cir. 2012) (quoting *Priester v.*

*Lowndes Cnty.*, 354 F.3d 414, 424 (5th Cir. 2004)) (emphasis added). Both

unequal treatment and discriminatory intent are necessary, and the failure to

include one or the other is fatal to a plaintiff's attempt to state a plausible claim.

*See id.*; *see also Village of Arlington Hts. v. Metro. Housing Dev. Corp.*, 429 U.S.

252, 265, 97 S. Ct. 555, 50 L. Ed. 2d 450 (1977)) ("Proof of racially discriminatory

intent or purpose is required to show a violation of the Equal Protection Clause.");

*see also Priester v. Lowndes Cty.*, 354 F.3d 414, 424 (5th Cir. 2004) (*citing Taylor*

*v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001)) (plaintiff "must allege and prove

that [she] received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent.").

Discriminatory intent requires a showing that the defendant took "a course of action because of, not merely in spite of, [the action's] adverse effects upon an identifiable group." *Ashcroft v. Iqbal*, 556 U.S. 676, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)) (internal citations omitted). The Court has been consistent in requiring the plaintiff to plead and prove discriminatory intent in the non-employment context.

Illustratively, in *Bowlby v. City of Aberdeen*, this Court dismissed a plaintiff's claim that her equal protection rights had been violated because the city revoked her permit to run a sno-cone stand based on zoning violations but had not acted against other business owners of a different race. 681 F.3d at 227. This Court affirmed the district court's dismissal, emphasizing that despite the plaintiff's general assertion of unequal treatment, "[n]owhere . . . [did] she allege that the [city's] treatment of her [was] the result of intentional discrimination." *Id*.

Thus, while clear that the equal protection clause prohibits only intentional discrimination, and a plaintiff is required to plead and prove such discriminatory intent, the adoption of Title VII's prima facie case of discrimination for *employment-related* equal protection claims has seemingly minimized that intent

15

requirement, at least at the initial pleading stage. *See*, e.g., *Priester v. Lowndes Cty.*, 354 F.3d 414, 424 (5th Cir. 2004) (quoting *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001) ("To state a claim of [gender] discrimination under the Equal Protection Clause and section 1983, the plaintiff 'must allege and prove that [s]he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent.'")); *see also Larry v. White*, 929 F.2d 206, 209 (5th Cir. 1991) (requiring discriminatory purpose or intent of act to demonstrate Section 1981 or 1983 violation); compare *Lauderdale v. Tex. Dep't of Criminal Justice*, 512 F.3d 157, 166 (5th Cir. 2007) ("Section 1983 and [T]itle VII are parallel causes of action. Accordingly, the inquiry into intentional discrimination is essentially the same for individual actions brought under sections 1981 and 1983, and Title VII.").[5]

As recently emphasized by this Court in an unreported decision, however, Title VII and § 1983 are different in at least one important way—"[u]nlike Title VII, § 1983 applies to individuals." *Jones v. Hosemann*, 812 F. App'x 235, 238 (5th Cir. 2020) (quoting *Sims v. City of Madisonville*, 894 F.3d 632, 640-41 (5th Cir. 2018) (per curiam)). And since § 1983 applies to individuals as opposed to employers, the court must remain "keenly aware of what § 1983 requires before

---

[5] Notably, in *Lauderdale*, which involved a sexual harassment claim, the named individual defendant was both the plaintiff's ultimate supervisor and the alleged harasser. 512 F.3d at 166.

plaintiffs can seek relief from those individuals—namely **individual causation**."
*Id.* (citing *Sims*, 894 F.3d at 640) (emphasis added).

Accordingly, in a § 1983 claim, the Supreme Court has instructed that "a
plaintiff must plead that each Government-official defendant, through the official's
own individual actions, has violated the Constitution." *Id.* (quoting *Iqbal*, 556 U.S.
at 676 (emphasis added); *see id.* at 683 (holding that defendants cannot be held
liable "**unless they themselves acted on account of a constitutionally protected
characteristic**" (emphasis added)). Only when those individual actions
"proximately cause[]" the plaintiff's constitutional injury can that plaintiff seek
relief under § 1983. *Id.* (quoting *County of Los Angeles v. Mendez*, 137 S. Ct.
1539, 1548, 198 L. Ed. 2d 52 (2017) (citing *Heck v. Humphrey*, 512 U.S. 477, 483,
114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994)); *see also Sims*, 894 F.3d at 639 (noting
that "individual liability for a government official who violates constitutional
rights . . . turns on traditional tort principles of 'but-for' causation").

Therefore, "while the prima facie elements of a Title VII claim may
establish an **employer's** liability for intentional discrimination, a § 1983 plaintiff
must additionally plead and prove which actions of the **individual defendant**
caused the harm." *Jones*, 812 F. App'x at 239 (emphasis in original); *see also
Iqbal*, 556 U.S. at 676 ("[Plaintiffs] must plead and prove that the defendant[s]
acted with discriminatory purpose."). A plaintiff's failure to do so undermines his

or her attempt to state a plausible equal protection claim against an individual

defendant. *See id.*

Despite the overlap in Title VII and equal discrimination claims, the

important distinctions between Title VII and Section 1983 manifest themselves in

other contexts as well. While this Court has consistently applied the cat's paw

theory of liability under Title VII, for instance, it has not yet explained what

standards apply to such a claim under Section 1983 and has intimated that they

may well be distinct. *See*, e.g., *Edelstein v. City of Brownsville*, 2021 U.S. App.

LEXIS 27010, *4 (5th Cir. Sept. 8, 2021) (declining to address cat's paw theory);

*see also Brown v. N. Panola Sch. Dist.*, 420 F. App'x 399, 400 (5th Cir. 2011) (per

curiam) (expressing no opinion on what legal standard applies to cat's paw claims

under Section 1983).[6] And the Eleventh Circuit, by analogy, has refused to extend

individual liability to the ultimate "formal" decisionmaker without some evidence

of discriminatory motive on the part of the formal decisionmaker. *See*, e.g., *Martin

v. Shelby Cnty. Bd. of Educ.*, 756 F. App'x 920, 925 (11th Cir. 2018) (holding that

"even if [the plaintiff] had been deprived of a constitutional right" by being denied

a job promotion, the members of the defendant board that made the formal

---

[6] Similarly, in *Clanton v. Orleans Parish School District*, this Court observed that proof of
pretext was required to as part of the prima facie case for an equal protection challenge to a
facially neutral employment practice, though it was not required for a similar Title VII challenge
because it contained no such element as part of the prima facie case. 649 F.2d 1084, 1097 (5th
Cir. 1981).

decision were entitled to summary judgment in their personal capacity because the plaintiff had "not shown discriminatory motive on the part of the Board's individual members in accepting the interview panel's [allegedly discriminatory] recommendation to hire [a competing candidate of a different race]"). Accordingly, an unwitting defendant has not "caused" a plaintiff's constitutional deprivation merely because that defendant unknowingly acted upon another's animus and was the final mechanical link in the chain of causation. *See id.*

Here, Mays Jackson failed to plausibly plead her equal protection claim against the individual Defendants-Appellants, as she failed to plausibly plead both individual discriminatory intent and individual causation. As discussed above, her fact allegations regarding the claimed individual conduct of the Defendants-Appellants were sparse.

She included no individual fact allegations at all as to Defendants-Appellants Jeannne Carter Luckey, Chip Morgan, or J. Walt Starr. While her Complaint noted that they ultimately cast a vote to hire Marcus Thompson as the President of JSU, she included no allegations even suggesting that they did so with discriminatory intent, that they passed on her candidacy as a result of discriminatory intent, or that the full IHL Board (much less the named individual Defendants-Appellants) was even aware of her candidacy as one of the many candidates who expressed interest in serving as JSU's thirteenth President.

ROA.452-57. As reiterated in *Iqbal*, she therefore failed to plausibly plead that any of these individuals acted on account of a protected characteristic and her equal protection claim therefore failed.

While she at least included some averments regarding individual Defendants-Appellants Steven Cunningham, Bruce Martin, Gee Ogletree, and Hal Parker based on their service on the search committee, those "allegations" were still nothing more than legal conclusions masquerading as factual assertions. ROA.451. She asserted that Cunningham, Martin, Ogletree, and Parker "denied Mays Jackson an interview for the President's position," that Cunnigham, Martin, Ogletree, and Parker "knew about Mays Jackson's 2021 EEOC Complaint of sex discrimination as they were IHL board members when Mays Jackson filed the Complaint and IHL hired counsel to respond to her discrimination allegations." ROA.453.

Again, despite the window-dressing, Mays-Jackson still did not allege any actual facts to plausibly suggest that any of these individual defendants acted with discriminatory intent in choosing not to interview or ultimately hire her. Her assertion that she, as one of approximately eighty applicants, was qualified but not hired for the position of President, is in and of itself insufficient to support a claim that she was not hired on the basis of intentional discrimination. Her claim that they were aware of her 2021 EEOC complaint relates only to her First Amendment

retaliation claim, which the District Court dismissed. As in *Bowlby*, her failure to plead that her "unequal treatment" was the result of intentional sex discrimination was fatal to her attempt to overcome the individual defendants' entitlement to qualified immunity.

Mays Jackson failed to plausibly plead that she was not hired as JSU's president because of intentional sex discrimination, or that the individual Defendants-Appellants acted on account of her sex, and the individual Defendants-Appellants were entitled to qualified immunity.

## B. Mays Jackson failed to identify any authority clearly establishing her equal protection claim

The second question of the qualified immunity analysis asks whether "the right at issue was clearly established at the time of the alleged misconduct." *Hicks v. LeBlanc*, 81 F.4th 497, 503 (5th Cir. 2023). In determining what constitutes clearly established law, this Court first looks to Supreme Court precedent and then to its own. *Id*. When there is no direct controlling authority, the court may rely on decisions from other circuits to the extent they "constitute a robust consensus of cases of persuasive authority." *Id*. (quoting *Shumpert v. City of Tupelo*, 905 F.3d 310, 320 (5th Cir. 2018)).

However, to defeat qualified immunity, "[m]uch more is needed" than the ostensible violation of a general legal principle. *Laviage v. Fite*, 47 F.4th 402, 408 (5th Cir. 2022). A court cannot deny qualified immunity without identifying a case

in which an official acting under similar circumstances was held to have violated a statutory or constitutional right, and without explaining why the case clearly proscribed the conduct of that individual defendant. *See Joseph v. Bartlett*, 981 F.3d 319, 345 (5th Cir. 2020); *see also Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015) ("Abstract or general statements of legal principle untethered to analogous or near-analogous facts are not sufficient to establish a right 'clearly' in a given context; rather, the inquiry must focus on whether a right is clearly established as to the specific facts of the case.").

Before the District Court, Mays Jackson failed to identify any controlling authority proscribing the conduct she complains of here. The 2020 and 2023 hiring decisions were made by separate boards, following distinct hiring processes, considering separate candidates, which resulted in separate and distinct appointments. Mays Jackson nonetheless failed to make any particularized argument as to her claim based on the 2023 hiring process, instead merely adopting her arguments regarding the 2020 hiring decision. ROA.671, 739. In support of that argument, however, she only cited caselaw supporting her general assertion that a prima facie case of discrimination under Section 1983 and Title VII are essentially the same, and that a plaintiff is not always required to formally apply for a position to pursue a failure to hire claim. ROA.667-71. None of those cases bore any direct

relation to Mays-Jackson's claims here, however, and she failed to even offer any particularized argument comparing those cases to the 2023 hiring process. *Id*.

Mays Jackson's argument as to her 2023 equal protection claim was so weak, in fact, that the individual defendants argued that it had been abandoned. ROA.703. In response, the District Court observed that she wrote only a "singular sentence echoing her argument about the 2020 hiring of Hudson" and recognized Fifth Circuit precedent holding that "a party who inadequately briefs an issue is considered to have abandoned the claim," but the court nonetheless found the claim sufficient without the benefit of any argument from Mays Jackson on the claim. ROA.739. (quoting *Houston v. Tex. Dep't of Agric*., 17 F.4th 576, 585 (5th Cir. 2021) (internal quotation omitted).

Despite allowing the claim to survive, the District Court likewise failed to identify any authority clearly establishing her claimed violation and failed to consider whether Mays Jackson was required to plead anything more than a prima facie case of discrimination under Title VII to survive the Defendants-Appellants' assertion of qualified immunity. ROA.740.

According to the District Court, the Defendants-Appellants were not entitled to qualified immunity because Mays Jackson "plausibly alleged that, in 2023, she was a qualified female who applied for the position of JSU President, and she was rejected when Thompson—a similarly situated male—was promoted to the

position." ROA.740. The District Court concluded that those alleged facts, in and of themselves, were sufficient under the equal protection clause to "allege a prima facie case of sex discrimination for failure to promote against the individually named defendants who voted to instate Thompson as JSU President in 2023." *Id*.

In support of that finding, the court cited *Lindsley v. TRT Holdings, Inc*., 984 F.3d 460, 469 (5th Cir. 2023), which the court presumably considered sufficient to clearly establish the right Mays Jackson claimed was violated. However, while *Lindsley* is indeed binding precedent, that case concerned a Title VII claim, and was insufficient to clearly establish the contours of Mays Jackson's Section 1983 claim against the individual trustees for the reasons stated above. 984 F.3d at 467. ROA.740.

Again, however, while the District Court was correct to use Title VII precedent as a template for the prima facie elements of Mays Jackson's 1983 sex discrimination claim, it failed to appropriately account for the differences between employer-liability under Title VII and individual liability under Section 1983. Critically, "[u]nlike Title VII, § 1983 applies to individuals" and, thus, requires "individual causation." *Jones v. Hosemann*, 812 F. App'x 235, 238 (5th Cir. 2020) (quoting *Sims v. City of Madisonville*, 894 F.3d 632, 640 (5th Cir. 2018)). "Thus, while the prima facie elements of a Title VII claim may establish an employer's liability for intentional discrimination, a § 1983 plaintiff must additionally plead and

prove which actions of the individual defendant caused the harm." *Jones*, 812 F. App'x at 238 (citing *Sims*, 894 F.3d at 641); *see also Muslow v. Bd. of Supervisors*, 2020 U.S. Dist. LEXIS 138349, *39-40, 2020 WL 4471647 (E.D. La. Aug. 4, 2020) (construing *Jones* and observing that a plaintiff pursuing an equal protection claim under the Title VII prima facie case framework must also include "allegations of particular actions by individual defendants"); *see also Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533-35 (5th Cir. 1997) (refusing to impute discriminatory intent from one public official to another in the qualified immunity context).

The District Court stopped short of that requirement, considering only whether Mays Jackson had pled a prima facie case of sex discrimination, and failing to consider at all whether Mays Jackson had pled which actions of individual Defendants-Appellants Duff, Cunningham, Martin, Luckey, Morgan, Ogletree, Parker, and Starr gave rise to their claimed individual liability. ROA.741.

As noted above, Mays Jackson's averments as to the alleged conduct of the individual defendants were at best thin. While she included some vague and conclusory assertions of individual conduct, those allegations were not facially plausible, and the District Court correctly observed as to her 2020 claim that a plaintiff's "mere conclusory statements evidencing only a personal belief that the defendants were motivated by an impermissible animus" are insufficient to

overcome qualified immunity. ROA.738. (quoting *Burns-Toole v. Byrne*, 11 F.3d 1270, 1274 (5th Cir. 1994)).

Mays Jackson's failure to plausibly plead discriminatory intent as to each of the individual Defendants-Appellants, and her failure to plead how such discriminatory intent gave rise to her claimed deprivation, was fatal to her Section 1983 equal protection claims against the individual trustees in their individual capacities. Without more, Mays Jackson's allegation that she was qualified for the job despite a male ultimately being hired was not enough to overcome the individual Defendants-Appellants' entitlement to qualified immunity.

The District Court also cited *Mackey v. Pigott*, No. 3:23-CV-233, 2023 WL 7663300, at *6 (S.D. Miss. Nov. 14, 2023), in support of its conclusion that Mays Jackson's Complaint asserted a violation of clearly established law, but that case failed to support the District Court's conclusion for two reasons. ROA.741.

First, "nonprecedential opinions do not establish any binding law for the circuit, [and] they cannot be the source of clearly established law for qualified immunity analysis." *Salzar v. Molina*, 37 F. 4th 278, 286 (5th Cir. 2022) (quoting *Marks v. Hudson*, 933 F.3d 481, 486 (5th Cir. 2019)). Because *Mackey* is non-

precedential, it could not serve as the source of clearly established law for purposes of Mays Jackson's claim.

Second, *Mackey* is plainly distinguishable from the allegations here. In *Mackey*, the plaintiff was a black male who had supervised every department within the governmental agency except the finance division and had both a doctorate and master's in education. 2023 WL 7663300, at *6. The candidate hired to lead the agency was a white male who allegedly "had no doctorate, no experience in higher education, and no record of supervising employees—all minimum job qualifications." *Id*. at *3. There was allegedly only one minimum qualification the successful candidate did satisfy, and he announced to the agency and his colleagues that "he lacked the requisite knowledge and experience to serve in the position." *Id*.

According to the plaintiff, he informed the board chair and the full board he was interested in becoming the executive director and submitted a written strategic vision as well as letters of support outlining his qualifications. *Id*. The board allegedly informed the plaintiff that "despite his qualification, they wished to keep the position open," and then downgraded the minimum qualifications for the position "to require only a master's degree in any field and 'experience in administration, leadership, and engagement at regional, state, or national levels.'" *Id*. at *4. The

board ultimately hired the candidate who the plaintiff alleged did not originally qualify for the position. *Id*.

At the motion to dismiss stage, the district court found the plaintiff's claim sufficient to survive qualified immunity because each individual defendant was alleged to have cast a "singular vote to elect a candidate less qualified than him," and the plaintiff alleged "he met every original qualification for the position whereas [the successful candidate] met only one." *Id*. at *14, 17. Based on the plaintiff's allegations, the successful candidate further "admitted he was unqualified" before the downgrade in eligibility requirements. *Id*. at *14, 17.[7]

Here, Mays Jackson did not allege, and the District Court did not find, that the successful candidate was unqualified for the position of president or that he failed to meet the minimum qualifications for the post. Moreover, unlike Mays Jackson, the plaintiff in *Mackey* was under consideration for the position at issue, and was at one point even considered a "finalist" before he had more interactions with the hiring board regarding the position. *Id*. at *1. Mays Jackson, on the other hand, alleged only that she was one of almost eighty candidates to apply for the position, and she did

---

[7] The court in *Mackey* also looked only to determine whether the plaintiff had pled a prima facie case of discrimination under the *McDonnell Douglas* framework, but the plaintiff there alleged significantly more in terms of individual conduct. 2023 U.S. Dist. LEXIS 203471 at *16, 2023 WL 7663300. In formulating that framework, the court in *Mackey* looked to *Mitchell v. Mills*, a case involving a Section 1983 equal protection claim, but the plaintiff in *Mitchell* was unable to advance beyond even the first prong of his prima facie case and this Court reversed the district court's denial of qualified immunity to those individual defendants. *Id*. (citing *Mitchell*, 895 F.3d 365, 370 (5th Cir. 2018)).

not claim that either the search firm or the search committee interviewed her or forwarded her candidacy for further consideration, either by the search committee or the full IHL Board. ROA.452-53.

The District Court nonetheless denied qualified immunity to each individual trustee who voted to hire Thompson, despite the absence of any allegation that they did so with discriminatory intent, or that they even individually considered or had knowledge of Mays Jackson's application. ROA.741.

Mays Jackson failed to identify binding precedent finding an equal protection violation under similar circumstances, and the District Court erred in finding that she had overcome the individual defendants' qualified immunity defense. Even if this Court now plainly holds that a plaintiff's mere statement of a Title VII prima facie case of discrimination is sufficient to state an equal protection claim against an individual defendant absent allegations of individual discriminatory intent or causation, that law was not clearly established at the time of the claimed violation and the Court should grant qualified immunity to the individual Defendants-Appellants.

## **CONCLUSION**

Mays Jackson asserted her equal protection claim against each IHL Board member who voted to appoint Marcus Thompson as the President of JSU, but she failed to allege or argue that any of them individually acted with discriminatory

intent or individually caused her claimed constitutional deprivation. Mays Jackson failed to state a plausible equal protection claim against the individual Defendants-Appellants and failed to identify any authority clearly establishing her claimed violation. The District Court erred in denying the Defendants-Appellants' entitlement to qualified immunity based solely on its conclusion that her allegations were sufficient to state a prima facie case of discrimination under the standards applicable for employer liability under Title VII. This Court should reverse the District Court's denial of qualified immunity to the individual Defendants-Appellants and render judgment with instructions to grant qualified immunity in their favor as to Plaintiff's equal protection claim regarding the 2023 hiring decision.

THIS, the 2nd day of April 2025.

Respectfully submitted,

TOM DUFF, STEVEN CUNNINGHAM, BRUCE MARTIN, JEANNE CARTER LUCKEY, CHIP MORGAN, GEE OGLETREE, HAL PARKER, AND J. WALT STARR, ALL IN THEIR INDIVIDUAL CAPACITIES

_/s/ J. Andrew Mauldin_
POPE S. MALLETTE (MB NO. 9836)
J. ANDREW MAULDIN (MB NO. 104227)
*Attorneys for Defendants-Appellants*

OF COUNSEL:

Mayo Mallette PLLC
2094 Old Taylor Road, Suite 200
Oxford, Mississippi 38655
Telephone: (662) 236-0055
Facsimile: (662) 236-0035
pmallette@mayomallette.com
dmauldin@mayomallette.com

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of FED. R. APP. P. 28.1(e)(2)(B)(i) because this brief contains 6,365 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(f), according to the word count of the word processing system used to prepare the document. This brief complies with the typeface requirements of FED. R. APP. R. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Mac, version 16.78 in Times New Roman font 14-point type face, except for footnotes, which were prepared in Times New Roman 12-point type face.

*/s/ J. Andrew Mauldin*
J. ANDREW MAULDIN